# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 21-484V

| | |
|---|---|
| JERROD KREBS,<br><br>       Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>       Respondent. | Chief Special Master Corcoran<br><br>Filed: October 31, 2024 |

*Paul R. Brazil*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Sarah Black Rifkin*, U.S. Department of Justice, Washington, DC, for Respondent.

### RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On January 11, 2021, Jerrod Krebs filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on September 21, 2019. Pet. at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters (the "SPU").

For the reasons described below I find that Petitioner is entitled to compensation, and I award **$60,000.00**, for past pain and suffering.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I.   **Relevant Procedural History**

Approximately six months after initiating the instant claim, Petitioner filed his immunization record and one medical record exhibit (on compact disc), followed by a statement of completion. ECF Nos. 6-8. Following this case's activation to SPU, Petitioner supplemented the record with additional medical records in February 2022. ECF Nos. 10, 15-16.

In April 2022, while the case awaited medical review, Petitioner submitted a settlement demand to Respondent. ECF No. 19. Following Respondent's medical review, the parties attempted to informally resolve this matter but were unsuccessful. ECF Nos. 23-25, 27-28, 30-32. During those discussions, Petitioner submitted additional medical records. ECF No. 26. Petitioner thereafter submitted a motion for a ruling on the record regarding entitlement and damages on October 2, 2023. Mot., ECF No. 34. Petitioner argued that he meets the Table definition of a SIRVA, and requested an award of $80,000.00 for actual pain and suffering. Mot. at 1.

Respondent reacted to Petitioner's entitlement and damages contentions on November 1, 2023. Opp., ECF No. 35. Respondent argued that Petitioner has failed to establish that the onset of his injury occurred within 48 hours of the subject vaccination, and thus his Table claim must fail. *Id.* at 8 (citing Ex. 4 at 178-80). Additionally, Petitioner did not exhibit reduced range of motion ("ROM") until one year post vaccination. *Id.* (citing Ex. 4 at 178-80, 460-66; Ex. 5 at 36-38). Respondent also contended that other conditions present on MRI (chronic partial tearing, moderate degermation and degenerative tearing, an 8mm cyst at the glenoid, and rotator cuff tendinosis with possible mild subacromial/subdeltoid bursitis) could be the cause of Petitioner's shoulder pain. *Id.* at 8-9 (citing Ex. 4 at 526-28). Otherwise, if Petitioner was found entitled to damages, Respondent argued that a lesser award of $60,000.00 was appropriate for past pain and suffering. *Id.* at 12.

Petitioner filed a reply on November 17, 2023, wherein he maintained his previous argument that Petitioner can establish a SIRVA Table claim and addressing Respondent's arguments regarding damages. Reply, ECF No. 36. This matter is now ripe for resolution.

II.   **Petitioner's Medical History**

Petitioner's medical history was non-contributory. *See* Ex. 4 at 3-177. At age 44, Petitioner received the subject flu vaccine on September 21, 2019, in his right shoulder. Ex. 3 at 3; Ex. 4 at 2, 461.

Approximately 32 days post-vaccination (October 23, 2019), Petitioner saw his primary care physician ("PCP") reporting right arm pain for "x 1 month." Ex. 4 at 178. Specifically, "[o]ne month ago[, he] got the flu shot. [He has had p]ain in the shoulder since." *Id.* Petitioner reported his shoulder was "[s]ore to move it a certain way. Elevation and moving it forward." *Id.* Despite this complaint, a physical examination revealed normal ROM. *Id.* at 180. Petitioner was assessed with bursitis of the right shoulder, and he was prescribed meloxicam (an anti-inflammatory). *Id.*

On November 11, 2019, Petitioner emailed his PCP's office stating his "shoulder pain was getting better with the anti inflammatory [sic] after about two weeks so [he] stopped taking the medicine. Now the pain is back[.]" Ex. 4 at 219. The PCP recommended an additional two weeks of meloxicam. *Id.* at 220.

Petitioner returned to his PCP on December 4, 2019, stating that his right shoulder pain "[f]eels about the same as it was." Ex. 4 at 265. A physical examination showed "tender[ness] with [his] elbow at 90 [degrees] with crossover reach." *Id.* at 267. Petitioner received a steroid injection in the right subacromial bursa. *Id.* A December 18, 2019 x-ray of Petitioner's right shoulder was normal. *Id.* at 270, 287-88.

Roughly seven months later, on July 21, 2020, Petitioner emailed his PCP's office stating that his "shoulder bursitis pain ha[d] returned and [wa]s as bad as it ever was." Ex. 4 at 425. Petitioner also noted that the pain was impacting his ability to sleep at night and "limits some use of that arm for day to day [sic] activities." *Id.* Petitioner received a referral to orthopedics. *Id.* The referral order contains a comment stating Petitioner had experienced three-to-four months of pain relief following his December 2019 steroid injection; however, "[n]ow symptoms [are] back and [he] has some pain with crossover, concerning for labrum issue." *Id.* at 428.

On August 17, 2020, Petitioner had a telehealth appointment with an orthopedic surgeon. Ex. 4 at 429. He reported that his right shoulder pain "started around the time of a flu shot in fall 2019." *Id.* Petitioner noted that his pain varied in severity and is "worse with reaching and elevating away from his body." *Id.* As this was a telehealth visit, a physical examination was not performed. *See id.* After a review of Petitioner's x-ray results, the orthopedist assessed Petitioner with right shoulder joint pain. *Id.* at 430. Petitioner was ordered to receive a repeat steroid injection and he was referred to physical therapy ("PT"). *Id.*

Four days later, on August 21, 2020, Petitioner saw his orthopedist in-person. Ex. 4 at 443. He complained of right shoulder pain with overhead activities, lifting heavy items,

3

and occasional night pain. *Id.* An examination showed diminished external rotation. *Id.* at 444. Petitioner received a repeat steroid injection. *Id.*

On September 10, 2020, Petitioner underwent an initial PT evaluation via a telehealth appointment. Ex. 4 at 461. Petitioner complained of right shoulder pain that "started after having [a] flu shot in 2019." *Id.* He also noted a weightlifting injury "10-15 years ago." *Id.* Petitioner described the pain as "dull [and] sharp at times." *Id.* at 462. When asked if he had "[o]ther musculoskeletal pain," Petitioner reported "none." *Id.* He rated his pain at a 1/10, with a typical range of 1-7/10. *Id.* A physical examination (instructed via video teleconference) showed reduced ROM and pain with abduction, flexion, and internal rotation. *Id.* at 464-65. Petitioner was assessed with right shoulder joint pain, for which three-to-four weeks of PT (through a home exercise program ("HEP")) was recommended. *Id.* at 465.

During Petitioner's October 8, 2020 PT appointment (conducted via telehealth video conference), he reported that his symptoms were "significantly worse" after his initial evaluation but he was now "feeling better and is doing his exercise . . . 'half the time.'" Ex. 4 at 478. He rated his pain at a 0/10 at rest and a 7/10 with aggravating factors. *Id.* Petitioner's progress was noted as "poor," and he was educated on "improving [his HEP] compliance." *Id.* at 478-79. Following this visit, Petitioner "did NOT return" to PT (via telehealth or otherwise) and he was discharged on November 19, 2020, due to his failure to comply with his program. *Id.* at 479 (emphasis in original).

Petitioner emailed his orthopedist's office on December 7, 2020, stating he was still experiencing shoulder pain despite steroid injections and PT. Ex. 4 at 524. Petitioner underwent an MRI on December 15, 2020, which showed: 1) long head biceps diffuse thinning likely representing chronic partial tearing; 2) posterior labrum moderate degeneration and degenerative tearing; 3) glenoid retroversion, posterior cartilage and bony degeneration, and an 8mm cyst at posterior margin of glenoid; 4) humeral head posterior subluxation may reflect positioning in scanner; and 5) rotator cuff mild tendinosis with possible mild subacromial/subdeltoid bursitis. *Id.* at 528. The orthopedist recommended Petitioner consider a repeat steroid injection, return to PT, or undergo surgery. *Id.* at 538-39.

On March 2, 2021, Petitioner returned to his orthopedist due to worsening right shoulder pain and ROM. Ex. 5 at 34, 36-38. A physical examination was consistent with decreased ROM, tenderness, and positive impingement signs. *Id.* at 36-38. The assessment note stated that Petitioner had right shoulder pain "in setting of degenerative changes and areas of tendinopathy, glenoid retroversion . . . now with adhesive capsulitis-type symptoms." *Id.* at 38. Petitioner received a repeat steroid injection. *Id.*

Petitioner did not return to care for right shoulder complaints during the remainder of 2021. *See,* e.g., Ex. 5 at 46-47, 55-59. During a September 15, 2021 PCP visit, Petitioner received another dose of the flu vaccine in his right arm. *Id.* at 57.

More than a year later, on January 18, 2023, Petitioner saw an internal medicine specialist for an annual examination. Ex. 10 at 41. Petitioner reported that he had started working out with a trainer for "2 weekends so far" and "had [a] sore right shoulder after a few days later but he felt the right shoulder was weaker." *Id.* He noted that he had a prior right shoulder injury "in 2020" that had never reached "complete resolution." *Id.* Petitioner was assessed, in relevant part, with right shoulder tendinosis. *Id.* at 44.

Petitioner subsequently attended in-person PT on January 30, 2023, noting that he had right shoulder pain "which started due to insidious onset 2019." Ex. 9 at 7. Petitioner explained that he did not experience much relief with his prior PT treatment because he attended telehealth sessions. *Id.* He reported being limited in his ability to reach overhead, behind his back, and to sleep on his right side. *Id.* Petitioner rated his pain at a 1/10, with a range of 0-8/10. *Id.* He attended nine additional sessions through March 3, 2023. *Id.* at 2, 7-46.

At the time of Petitioner's last PT session on March 3, 2023, Petitioner reported improvement in his pain (rating it at a 1/10, with a range of 0-6/10), but he was still experiencing restricted mobility when reaching behind his back. Ex. 9 at 44-45. His rehabilitation potential was noted as "excellent." *Id.* at 45. Despite the therapist's recommendation, Petitioner did not return for additional treatment with PT. *See id.* at 46. No additional medical records or affidavit evidence has been filed.

### III.    Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

Section 11(c)(1) also contains requirements concerning the type of vaccination received and where it was administered, the duration or significance of the injury, and the lack of any other award or settlement. *See* Section 11(c)(1)(A), (B), (D), and (E). With regard to duration, a petitioner must establish that he suffered the residual effects or complications of such illness, disability, injury, or condition for more than six months after the administration of the vaccine. Section 11(c)(1)(D).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g*. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381 at 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 at 204 (2013) (citing § 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

### 1. Petitioner Has No Prior Right Shoulder Condition or Injury

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent has not contested that Petitioner meets this criterion, and there is nothing in the filed evidence to suggest otherwise.

### 2. Onset of Petitioner's Injury Occurred within 48 Hours of his Vaccination

The aforementioned medical records establish that Petitioner consistently reported to treaters onset close-in-time to vaccination, seeking initial treatment within roughly one month of his September 21, 2019 vaccination, and that he indeed was experiencing symptoms in the relevant timeframe. *See,* e.g., Ex. 4 at 178, 429, 461.

Respondent deems this one-month delay to be fatal to establishing Table onset. Opp. at 8 (citing Ex. 4 at 178). But this objection fails to take into account the totality of the evidence. First, the delay in seeking treatment is *de minimis* for a SIRVA injury. Even *greater* delays have not undermined an otherwise-preponderantly-established showing of two-day onset. *See,* e.g., *Tenneson v. Sec'y of Health & Hum. Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs.*, No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because a petitioner underestimated the severity of her shoulder injury). It is common for SIRVA petitioners to delay seeking treatment, thinking the injury will resolve on its own, since patients are often told by medical providers at the time of vaccination to expect some soreness and pain for a period of time after.

Second, Petitioner affirmatively and repeatedly linked his shoulder pain to the flu vaccine – beginning with the October 23rd treatment encounter, at which time he endorsed right arm pain for "x 1 month" and that he was experiencing "pain in the shoulder since" his flu shot one month ago. Ex. 4 at 178. This reporting provides additional support for a close-in-time onset. Other subsequent medical records also corroborate the contention made in the petition that Petitioner's pain began within 48 hours of vaccination. *See,* e.g., Ex. 4 at 429 (an August 17, 2020 orthopedic note stating that his pain "started around the time of a flu shot in fall 2019"); Ex. 4 at 461 (a September 10, 2020 PT evaluation note reporting that his pain "started after having [a] flu shot in 2019"). These medical entries do not contain a precise date of onset, instead including only a general temporal relationship between onset of his injury and his subject flu vaccination. Yet, Petitioner consistently linked the two events through (at least) September 2020.

Accordingly, and based upon the above, I find there is preponderant evidence that establishes the onset of Petitioner's right shoulder pain more likely than not occurred within 48 hours of vaccination, and thus within the Table timeframe.[4]

### 3. Petitioner's Pain was Limited to his Right Shoulder

The third requirement for a Table SIRVA is that the pain and limited ROM are limited to the shoulder in which the subject vaccination was administered. 42 C.F.R. § 100.3(c)(10)(iii). Respondent has not contested that Petitioner meets this criterion, and there is not preponderant evidence in the filed record to suggest otherwise.

### 4. There is No Evidence of Another Condition or Abnormality

The last criterion for a Table SIRVA states that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent very briefly contends that Petitioner fails to meet this criterion, as his MRI results showed chronic partial tearing, moderate degermation and degenerative tearing, an 8mm cyst at the posterior margin of the glenoid, and rotator cuff mild tendinosis with possible mild subacromial/subdeltoid bursitis. Opp. at 8-9 (citing Ex. 4 at 526-28).

Although Respondent correctly reads this evidence, I have previously found that in the vast majority of SIRVA claims, MRIs of an injured shoulder will routinely reveal evidence of degeneration, especially in certain specific age groups of the population. *See Werning v. Sec'y of Health & Hum. Servs.,* No. 18-267V, 2020 WL 5051154, at *11 (Fed. Cl. Spec. Mstr. July 27, 2020) (finding degenerative changes visible on MRI in a 67-year-old petitioner did not equate to evidence of another condition or abnormality that would explain the post vaccination symptoms). Petitioner here was in his mid-forties at the time he underwent an MRI of his right shoulder. It is thus not uncommon to find such evidence of degeneration or degermation of the shoulder on an MRI scan, and it does not rise to the level of a disqualifying fact for the purposes of establishing a Table SIRVA claim. And the contemporaneous medical records do not contain any treaters' opinions that such findings were sources of Petitioner's right shoulder pain and reduced ROM.

---

[4] Respondent also asserts that when Petitioner first reported shoulder pain linked to the subject flu vaccination on October 23, 2019, he exhibited normal ROM upon examination and did not demonstrate reduced ROM until over one year post vaccination. Opp. at 8 (citing Ex. 4 at 178-80, 460-66; Ex. 5 at 36-38). The Act does not contain a requirement for the manifestation of reduced ROM at the same time as pain, or within 48 hours of vaccination. *See Gibson v. Sec'y of Health & Hum. Servs.,* No. 20-243V, 2022 WL 17820891, at *8 (Fed. Cl. Spec. Mstr. Oct. 5, 2022) (stating that "even if the QAI requires proof of limited ROM, it need not manifest at the same time as pain"). I thus will not address this argument put forth by Respondent.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly in his right shoulder on September 21, 2019, in San Marcos, California. Ex. 1 ¶ 2; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for his injury. Ex. 1 ¶ 6; Section 11(c)(1)(E) (lack of prior civil award). As stated above, I have found that the onset of Petitioner's right shoulder pain was within 48 hours of vaccination. *See* 42 C.F.R. § 100.3(c)(10)(ii) (setting forth this requirement). This finding also satisfies the requirement that Petitioner's first symptom or manifestation of onset occur within the time frame listed on the Vaccine Injury Table. 42 C.F.R. § 100.3(a)(XIV)(B) (listing a time frame of 48 hours for a Table SIRVA following receipt of the influenza vaccine). Therefore, Petitioner has satisfied all requirements for a Table SIRVA. Additionally, it is not disputed that Petitioner has established the six-month severity requirement. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement).

Based upon all of the above, Petitioner has established that he suffered a Table SIRVA. Additionally, he has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## IV. Damages

The parties have also briefed damages in this case, which is limited to a request for a past pain and suffering award. Petitioner requests $80,000.00 for actual pain and suffering. Mot. at 1, 9; Reply at 3. Respondent proposes an award of $60,000.00 for past pain and suffering. Opp. at 12.

### A. Legal Standards for Damages Awards

In several recent decisions, I have discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within the SPU. I fully adopt and hereby incorporate my prior discussion from Sections III and IV of *Leslie v. Sec'y Health & Hum. Servs.*, No. 18-0039V, 2021 WL 837139 (Fed. Cl. Spec. Mstr. Jan. 28, 2021) and *Johnson v. Sec'y of Health & Hum. Servs.,* No. 18-1486V, 2021 WL 836891

(Fed. Cl. Spec. Mstr. Jan. 25, 2021), as well as Sections II and III of *Tjaden v. Sec'y of Health & Hum. Servs.,* No. 19-419V, 2021 WL 837953 (Fed. Cl. Spec. Mstr. Jan. 25, 2021). *See also Yodowitz v. Sec'y of Health & Hum. Servs.,* No. 21-370V, 2024 WL 4284926 (Fed. Cl. Spec. Mstr. Aug. 23, 2024) (discussing statistical data of compensation awarded in prior SIRVA cases to-date).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[5]

### B. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed, leaving only the severity and duration of the injury to be considered. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including all medical records, declarations, plus all filings submitted by both Petitioner and Respondent. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

Citing four prior damages determinations (*Dagen, Bossenbroek, Russano,* and *Bordelon*),[6] Petitioner requests an award of $80,000.00. *See,* e.g., Mot. at 1. He asserts that his "formal treatment course and duration of symptoms were longer" than those of the petitioners from the aforementioned SIRVA cases. *Id.* at 9. In particular, Petitioner emphasizes that he received treatment for "about 18 months" post vaccination; his pain

---

[5] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

[6] *Dagen v. Sec'y of Health & Hum. Servs.*, No. 18-442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019) (awarding $65,000.00 for actual pain and suffering); *Bossenbroek v. Sec'y of Health & Hum. Servs.*, No. 17-122V, 2020 WL 2510454 (Fed. Cl. Spec. Mstr. Apr. 3, 2020) (awarding $50,000.00 for actual pain and suffering); *Russano v. Sec'y of Health & Hum. Servs.*, No. 18-392V, 2020 WL 3639804 (Fed. Cl. Spec. Mstr. June 4, 2020) (awarding $80,000.00 for actual pain and suffering); *Bordelon v. Sec'y of Health & Hum. Servs.,* No. 17-1892V, 2019 WL 2385896 (Fed. Cl. Spec. Mstr. Apr. 24, 2019) (awarding $75,000.00 for actual pain and suffering).

was severe at times, rated up to a 7/10; he received three steroid injections – with varying degrees of relief ("more than any petitioner in the comparison [cases]"); he "did not attend much formal therapy," instead undergoing virtual sessions due to the pandemic, and he has "never fully recovered from his injury as evidenced by his recent return to care." *Id.* at 8-9.

Respondent, by contrast, maintains that an award of no more than $60,000.00 is appropriate. Opp. at 12. According to Respondent, Petitioner sustained a "relatively mild" SIRVA, evidenced by his waiting 32 days before seeking treatment, reported improvement two months post vaccination with only anti-inflammatory medications, and pain levels rated at a 0-1/10 (with 7/10 at worst). *Id.* (citing Ex. 4 at 178-80, 219-23, 265-67, 425-45, 460-79, 522-25; Ex. 5 at 34-38). In addition, Petitioner's injury resolved around March 2021, 18 months post vaccination, with only "conservative treatment with significant gaps in care." *Id.* at 13. Specifically, Petitioner had "minimal doctor's visits," an MRI, three steroid injections, one prescription medication, and two PT sessions. *Id.* Respondent further asserts that any treatment Petitioner received after March 2021 was unrelated to his alleged SIRVA. *Id.* He thus agrees that *Dagen* and *Bossenbroek* are comparable to the facts of Petitioner's case.[7] *Id.* at 15. He further compares the facts of Petitioner's case to the petitioners in *Allner, Berberich, Klausen,* and *Knauss*.[8] *Id.* at 16-18.

The filed record in this case establishes that Petitioner suffered a mild SIRVA overall, with fairly moderate pain upon onset. Particularly relevant to my decision is evidence demonstrating Petitioner's treatment with his PCP within 32 days of his vaccination, subsequent treatment with a prescription for an anti-inflammatory (meloxicam), a normal x-ray, an MRI (not indicative of severe findings),[9] three corticosteroid injections, participation in two telehealth PT sessions (plus an HEP, of

---

[7] *Dagen v. Sec'y of Health & Hum. Servs.*, No. 18-442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019); *Bossenbroek v. Sec'y of Health & Hum. Servs.*, No. 17-122V, 2020 WL 2510454 (Fed. Cl. Spec. Mstr. Apr. 3, 2020).

[8] *Allner v. Sec'y of Health & Hum. Servs.,* No. 19-1048V, 2022 WL 6962656 (Fed. Cl. Spec. Mstr. Sept. 9, 2022) (awarding $60,000.00 for past pain and suffering); *Berberich v. Sec'y of Health & Hum. Servs.,* No. 20-10V, 2021 WL 4823551 (Fed. Cl. Spec. Mstr. Sept. 14, 2021) (awarding $60,000.00 for past pain and suffering); *Klausen v. Sec'y of Health & Hum. Servs.,* No. 19-1977V, 2023 WL 2368823 (Fed. Cl. Spec. Mstr. Feb. 2, 2023) (awarding $60,000.00 for past pain and suffering); *Knauss v. Sec'y of Health & Hum. Servs.,* No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for past pain and suffering).

[9] Petitioner's MRI showed long head biceps diffuse thinning likely representing chronic partial tearing; posterior labrum moderate degeneration and degenerative tearing; glenoid retroversion, posterior cartilage and bony degeneration, and an 8mm cyst at posterior margin of glenoid; humeral head posterior subluxation may reflect positioning in scanner; and rotator cuff mild tendinosis with possible mild subacromial/subdeltoid bursitis. Ex. 4 at 528.

which he was noncompliant) – resulting in some lingering effects. Additionally, while Petitioner's medical records do not contain descriptions of his pain on a ten-point scale at his first post-vaccination visits, in later records containing such descriptions from fall 2020 he rated his pain ranging from a 0-1/10 at rest and a 7/10 with aggravating factors. *See,* e.g., Ex. 4 at 462 (a September 10, 2020 PT note reporting pain at a 1/10 with a range of 1-7/10); Ex. 4 at 478 (an October 8, 2020 PT note reporting pain at a 0/10 at rest and a 7/10 with aggravating factors). Such notations support a moderate SIRVA upon onset, with significant improvement near the end of his conservative treatment.

Additionally, although not shown upon examination at his first post vaccination visits, Petitioner complained of and exhibited reduced ROM to some degree throughout his treatment course. *See,* e.g., Ex. 4 at 178 (an October 23, 2019 complaint of soreness when he moves his shoulder, including with "[e]levation and moving it forward" but a normal ROM upon examination); Ex. 4 at 429 (an August 17, 2020 telehealth report of his pain being "worse with reaching and elevating away from his body"); Ex. 4 at 443-44 (an August 21, 2020 orthopedic examination showing decreased ROM with external rotation); Ex. 4 at 464-65 (a September 10, 2020 PT examination revealing diminished ROM with abduction, flexion, and internal rotation); Ex. 5 at 36-38 (a March 2, 2021 orthopedic examination consistent with reduced ROM). The medical records thus show that Petitioner's limitations in ROM continued to an extent, or through (at least) March 2021.

Further, the record preponderantly establishes that Petitioner's treatment course and ongoing SIRVA symptoms continued for approximately 18 months. Although the contemporaneous medical records contain complaints of right shoulder pain extending after March 2, 2021 (into January 2023), there is simply too large of a treatment gap for Petitioner's later complaints to be linked to the subject vaccination and related injury. For example, following Petitioner's March 2, 2021 visit, he did not return to care for his vaccine-related right shoulder injury until January 18, 2023 – over *22 months* later. In the meantime, not only did Petitioner have PCP visits for unrelated ailments throughout 2021, during which he could have complained of ongoing right shoulder symptomology (if present), in mid-September 2021, Petitioner received a *repeat flu vaccination in the injured right shoulder* – thus conceivably triggering a separate injury. *See,* e.g., Ex. 5 at 46-47, 55-59. More so, when he returned to care in January 2023, Petitioner attributed the soreness in his right shoulder to his recent exercise with a trainer, not the subject 2019 vaccination. Ex. 10 at 41. While Petitioner noted that he had a prior right shoulder injury that had never "complete[ly] resol[ved]," he did not refer to a vaccine cause at that time or thereafter. *See id.* at 41-44; *see also* Ex. 9 at 7. Petitioner is thus not entitled to damages relating to right shoulder complaints after March 2, 2021.

13

The severity and duration of Petitioner's pain, although significant (at times) and fairly lengthy, is also offset by one long seven-month treatment gap. *See Shelton v. Sec'y of Health & Hum. Servs.*, No. 19-279V, 2021 WL 2550093, at *7 (Fed. Cl. Spec. Mstr. May 21, 2021) (reducing an award due to a gap in care). When medical records filed for petitioners reveal comparable gaps, I weigh the reason for the gaps against evidence of a petitioner's purported pain. *See id.* The record reveals that the timing and explanation for Petitioner's seven-month gap in treatment (from December 2019 to July 2020) can be (at least partially) explained by Petitioner's receipt of a steroid injection on December 4, 2019. Ex. 4 at 265-67. Indeed, upon returning to care in July 2020, Petitioner reported he had experienced three-to-four months of relief following this injection, or through approximately April 2020. *Id.* at 428. The remainder of this gap can also partially be explained by the COVID-19 pandemic, as Petitioner alleges (which manifested most prominently in the U.S. in March 2020). Otherwise, I typically deem the decision to forego treatment as evidence that heavily underscores the mildness or stability of the injury, since it could be endured without medical assistance for periods of time.

The overall severity and duration of the injury at issue herein is ultimately distinguishable from Petitioner's cited comparable decisions. In *Russano*, while the petitioner treated for a significantly shorter duration than Petitioner here (eight versus 18 months), the *Russano* petitioner experienced a more severe injury. No. 18-392V, 2020 WL 3639804 (Fed. Cl. Spec. Mstr. June 4, 2020). For instance, *Russano* rated her pain ranging from 8-9/10 (decreasing to a 2/10) and she received objectively more treatment, including one steroid injection and 23 formal PT sessions. *Id.* More so, the *Russano* petitioner had several complicating factors, including a history of breast cancer and affiliated lumpectomy, which prohibited the use of her non-injured shoulder throughout her treatment course; she also required cortisone injections to treat an inflammatory condition in her ear, caused by repeatedly sleeping on one side as a result of her vaccine injury. *Id.* Petitioner here, by contrast, had a gap in treatment (thus mitigating the duration of his injury), did not rate his pain as significantly, receive as much formal PT, nor present evidence of similar unique circumstances to warrant an equivalent award of $80,000.00.

Likewise, in *Bordelon* (wherein $75,000.00 was awarded for pain and suffering), the petitioner treated for a total of eight months, she presented within two weeks of vaccination (rating her pain at a 9/10, subsequently decreasing to an 8/10 and 2/10 over time and with treatment), she received one cortisone injection (which provided relief for 15 days), and underwent 16 formal PT sessions. No. 17-1892V, 2019 WL 2385896 (Fed. Cl. Spec. Mstr. Apr. 24, 2019). The *Bordelon* petitioner also demonstrated the impact her injury had on her life as a single mother of three children and three dogs. *See id.* Petitioner here admittedly received greater and longer relief from his steroid injection and, while he

received more injections, attended *significantly* less PT than the *Bordelon* petitioner – thus entitling him to a lesser award.

Petitioner has also failed to submit *any* specific evidence regarding how his vaccine-related SIRVA has impacted his personal life and/or activities of daily living. *See,* e.g., Ex. 1 (Petitioner's declaration containing no description of his pain, the course of his injury, or the effects his injury had on his personal or professional life). Without such evidence (other than notations in the medical records regarding his functional limitations, i.e., with sleeping, overhead activities, and lifting heavy items (Ex. 4 at 443-44)), I am unable to glean extenuating circumstances from the record that, if present, could have entitled Petitioner to a higher award as seen in cases such as *Russano* and *Bordelon*. Otherwise, the ensuing decision is based, in large part, on Petitioner's objective treatment course and progression.

The remaining cases relied upon by Petitioner are more factually comparable, but the amounts awarded in such cases was less than the amount requested by Petitioner – therefore supporting a lower award in this case. For instance, the *Dagen* petitioner (awarded $65,000.00) treated for roughly one year, rated her pain at a 10/10 upon vaccination (decreasing to a 2/10 at best), experienced severely limited ROM/swelling, underwent nine formal PT sessions, and received one steroid injection that provided four days of relief. No. 18-442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6, 2019). Given Petitioner's relatively mild ROM limitations compared to those of the *Dagen* petitioner, lower pain rated on a ten-point scale, lesser PT (consisting of at-home exercises only and an ultimate discharge due to noncompliance), and seven-month gap in care, a slightly lower award is warranted here.

In addition, the *Bossenbroek* petitioner (awarded $50,000.00 in past pain and suffering), is instructive but distinguishable nonetheless. No. 17-122V, 2020 WL 2510454 (Fed. Cl. Spec. Mstr. Apr. 3, 2020). The petitioner in *Bossenbroek* treated for approximately three years (double the length of Petitioner's treatment) but had at least two lengthy gaps in care, totaling one year and six months, respectively – thus speaking to a reduced award in that case. *See id.* The *Bossenbroek* petitioner experienced her worse pain for the first two months post vaccination, she treated with six PT sessions, rated her pain ranging from a 2-6/10, and she established that her pain interfered with her ability to work on the computer, and to care for and breastfeed her newborn. *Id.* Given that *Bossenbroek* declined a steroid injection while Petitioner received three, I find a slightly higher award is appropriate in this case.

In fact, Respondent's cited cases awarding $60,000.00 provide guidance for fair compensation in Petitioner's case. The petitioner in *Allner,* for example, treated for over

four years, but her care was intermittent (with several gaps totaling eight, ten, and 15 months, respectively), some as a result of the relief she experienced following her *five* steroid injections. No. 19-1048V, 2022 WL 6962656 (Fed. Cl. Spec. Mstr. Sept. 9, 2022). *Allner's* care was otherwise conservative with only eight PT sessions and two MRIs with mild findings. *Id.* Petitioner in this case reportedly experienced relief following his receipt of at least one of his steroid injections, thus partially contributing to a gap in care similar to that in *Allner*.

Overall, the best comparable offered in this case involved another $60,000.00 past pain and suffering award. *Berberich v. Sec'y of Health & Hum. Servs.*, No. 20-10V, 2021 WL 4823551 (Fed. Cl. Spec. Mstr. Sept. 14, 2021). The *Berberich* petitioner sought treatment for shoulder pain within 12 days of vaccination, received two steroid injections, rated his pain ranging from a 0-5/10 throughout his treatment course, and he underwent two PT sessions – admitting that he was inconsistent with his HEP. *Id.* While Petitioner treated for a longer total period than the *Berberich* petitioner (18 versus approximately eight months), Petitioner here had a seven-month treatment gap – thus somewhat equalizing the duration of each petitioner's injury. In addition, both the *Berberich* petitioner and Petitioner in this case received fairly homologous (and objectively conservative) treatment, including being inconsistent with their at-home exercises. Therefore, the same sum is properly awarded.

## Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that the onset of Petitioner's injury, specifically shoulder pain, was within 48 hours of his vaccine, no other condition or abnormality is present that would explain Petitioner's post-vaccination condition, and he has otherwise satisfied the requirements for a Table SIRVA claim. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

I also find that, for all of the reasons discussed above and based on consideration of the record as a whole, **$60,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[10]

---

[10] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[11]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[11] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.